UNITED STATES of America, Plaintiff–Appellee,

v.

Michael PIGEE, Ramon Webb, and Denishha Ann Lipscomb, Defendants–Appellants.

Nos. 98–2816, 98–2823 and 98–3212.

United States Court of Appeals, Seventh Circuit.

Argued May 11, 1999.

Decided Dec. 10, 1999.

Robert L. Garrison (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Norman London (argued), Robert Herman, Schwartz, Herman & Davidson, St. Louis, MO, for Defendant–Appellant Pigee.

Robert A. Handelsman (argued), Chicago, IL, for Defendant–Appellant Webb.

Norman London (argued), Lee T. Lawless, Office of the Federal Public Defender, St. Louis, MO, for Defendant–Appellant Lipscomb.

Before COFFEY, RIPPLE and WOOD, Circuit Judges.

COFFEY, Circuit Judge.

On June 18, 1997, a federal grand jury in the Southern District of Illinois returned an eleven count Second Superseding indictment against Brian Frye,[1] Frye's wife, Denishha Ann Lipscomb, Michael Pigee, and Ramon Webb. Count One charged Lipscomb, Pigee, and Webb (as well as Frye) with conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846. Count 2 charged Lipscomb (and Frye) with distributing crack cocaine. *See* 21 U.S.C. § 841(a)(1). Count 5 charged Pigee with intent to distribute crack cocaine. *See* 21 U.S.C. § 841(a)(1). Count 6 charged Lipscomb with maintaining a residence for the purpose of distributing cocaine and crack cocaine, and Count 7 charged Lipscomb with making a building she owned available for the purpose of storing cocaine and cocaine base. *See* 21 U.S.C. § 856(a)(1), (a)(2). Counts 9 and 10 charged Webb and Pigee, respectively, with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Counts 3, 4, 8, and 11 are not involved in this appeal.[2] On November 26, 1997, a jury convicted the defendants on all counts charged. Lipscomb, Pigee, and Webb appeal.

## I. BACKGROUND

Working with Alton, Illinois Police surveillance officers, Melton Thomas bought crack cocaine from defendants Frye and

---

1. Brian Frye is not involved in this appeal. Frye was tried separately from the other defendants, and was convicted, after the government filed a Motion for Severance of Frye's trial.

2. Counts 4 and 8 involved only defendant Brian Frye, who is not a party to this appeal. Counts 3 and 11 were dismissed upon motion of the government.

Lipscomb on December 12, 1996, at their home at 539 Highland Avenue in Alton, Illinois. Thomas later made two more controlled crack purchases from Frye at Frye's home at 539 Highland Avenue.

Lipscomb owned the house at 539 Highland Avenue in Alton, and the house next door at 541 Highland Avenue. During the last crack buy that Thomas made under police surveillance, the police recorded Frye telling Thomas that he "had to go next door to get the crack." Police then saw Frye leave his residence and enter the house at 541 Highland Avenue. Police observed Frye as he remained in the house next door for less than one minute, returned to his house at 539 Highland Avenue and completed the sale to Thomas.

On January 23, 1997, the day after Thomas' final controlled crack buy, police simultaneously executed search warrants at 539 and 541 Highland Avenue. At 539 Highland Avenue, police seized 3.6 grams of crack and two firearms—a shotgun from Frye's bedroom and a loaded handgun from the living room (next to the front door). At 541 Highland Avenue, police seized 4.2 grams of crack and two firearms; police found a loaded handgun underneath a bed in defendant Webb's bedroom and a second loaded handgun in the other bedroom, along with several documents bearing defendant Pigee's name.

Webb testified at trial that although he did own the handgun found under his bed, he kept it only for protection. Webb claimed that he was unaware of the presence of the other handgun in the house which was found next to 4.2 grams of crack cocaine.

Melton Thomas testified at trial that he had purchased crack from the defendants. Nicole Hearn, who lived in the basement of Frye and Lipscomb's house for part of the time relevant to this action, also testified at trial that both Frye and Lipscomb sold crack to customers inside the house at 539 Highland Avenue throughout the time she lived with them.

Other testimony offered at trial demonstrates that 541 Highland Avenue, which defendants Pigee and Webb rented from Lipscomb, was also utilized in the charged drug conspiracy. Thomas Hearn testified that Pigee would occasionally sell crack at 541 Highland Avenue, but never inside the house.

Hearn also bought crack from Webb, but he testified that Webb always refused to sell the crack to him at the 541 Highland Avenue address. Instead, Webb would ask Hearn what he wanted and the two would meet somewhere else to complete the buy. Webb told Hearn that "they didn't really want [Hearn] to come to the house."

Trial testimony also established that Pigee and Webb both delivered crack for resale to Frye and Lipscomb at the 539 Highland address. Reagan Jones testified that on approximately thirty occasions, Frye and Lipscomb asked Jones to leave when Webb arrived on the scene, explaining that "stuff" was coming over and that Jones could not be present when it arrived. On each of these occasions, Lipscomb and Frye were out of crack before Webb arrived, but had crack to sell to Jones immediately after Webb left the house.

Thomas said that he was not asked to leave Frye and Lipscomb's house when Pigee came over, but that on two occasions when Frye was out of crack, Pigee arrived, Pigee and Frye stepped into another room for privacy, and as soon as Pigee left, Frye had the necessary crack to sell to Thomas.

Timothy Brunholtz, Drug Enforcement Agency ("DEA") Resident Agent in Charge, testified for the government as an expert witness on narcotics trafficking. The testimony of Thomas and Jones supports Brunholtz's testimony that 541 Highland Avenue is what the DEA refers to as a "stash house," the premises where an additional drug supply for the "crack house" is kept. Brunholtz's opinion was based in part on the fact that the crack seized at 539 Highland Avenue was pack-

aged for sale, while the crack seized at 541 Highland Avenue was not.

DEA Agent Ralph Moore was involved in the drug raid at 539 Highland Avenue. Moore testified that during the raid he had located and called out a serial number from a television set ("TV") to an Alton police officer. Moore recalled that Alton Police Detective Waldrup had in turn called and relayed the serial number to a Rent–A–Center store. The rental agency confirmed that the TV had in fact been rented from them. At the trial, Reagan Jones testified that he had traded a rented TV to Frye in exchange for crack cocaine. Jones said that he recognized that same TV in photos taken by the police after the execution of the search warrant at 539 Highland Avenue.

After the trial concluded, a jury found the defendants Lipscomb, Pigee, and Webb guilty of all counts charged in the Second Superseding indictment. The defendants filed post-trial motions alleging (1) perjury by Moore (claiming he testified falsely about the television set), (2) prosecutorial misconduct, and also (3) sought a new trial or, in the alternative, dismissal of the indictment. The court held two post-trial evidentiary hearings related to the defendants' motion. At the first hearing, the defendants called Sergeant Waldrup as a witness. He testified that he had not called in any TV serial numbers on the night of the raid and that he had not called Rent–A–Center either. A manager from Rent–A–Center testified that no one from the police department had called the store to check on a TV serial number. The defense argued that this testimony showed that Agent Moore had perjured himself. However, government witnesses called at the hearing were able to generally support Moore's testimony.

At the first hearing, DEA Special Agent Paul Robinson testified that he remembered Moore reading a serial number from the back of a TV because Moore had borrowed Robinson's flashlight to do so. Robinson also recalled that he had heard someone from the Alton Police Department, either Sgt. Waldrup or Detective Adams, calling in serial numbers on the police radio. Further, a witness from the Illinois State Police explained that according to State Police computer records, an Alton police officer had indeed called in a serial number with the letters "JVC" on the night of the raid,[3] but that the records did not indicate which Alton police officer had made the call. Finally, trial testimony revealed that Jones had leased a JVC television from the Rent–A–Center.[4]

The trial court denied the defendants' Motion for a New Trial after the first evidentiary hearing, finding that Moore had not testified falsely and that the evidence demonstrated that Moore's description of the events involving the TV set was likely accurate. The judge concluded that Agent Moore and Sgt. Waldrup had, at worst, a "garden variety" disagreement about the events surrounding the TV, probably due to the fact that Sgt. Waldrup was preoccupied with commanding thirty officers on the night of the execution of the search warrant.

The defendants filed a Motion to Reconsider and the district court held a second post-trial evidentiary hearing on the television issue. At this second hearing, the defense called a witness from the JVC Corporation whose testimony tended to establish that the serial number called in to the State Police could not have been that of the TV Jones rented from the Rent–A–Center. Despite this evidence, the trial judge denied the defendants' Motion to Reconsider, again ruling that the testimo-

---

**3.** The JVC Corporation makes TV sets, and Moore testified at the first hearing that the "JVC" number was the one he had read on the night of the raid.

**4.** A police witness testified that a few days after the search warrant had been executed he went back to 539 Highland Avenue to seize the JVC television, but that the TV was gone by that time.

ny of Agent Moore was not false and that Moore's testimony had been corroborated by other evidence introduced at the post-trial hearings.

The judge sentenced Lipscomb to 180 months imprisonment on each of counts 1, 2, 6, and 7, to be served concurrently; supervised release terms of four years on Count 1 and three years on Counts 2, 6, and 7, with terms to run concurrently; a $400 assessment; and a fine of $1500.

The district court sentenced Pigee to 168 months of imprisonment on Counts 1 and 5, and 120 months on Count 10, all terms to be served concurrently; supervised release terms of eight years on Count 1, six years on Count 5, and three years on Count 10, with terms to run concurrently; a $300 assessment; and a $1500 fine.

The trial court sentenced Webb to 165 months of imprisonment on each of Counts 1 and 9, to be served concurrently; supervised release terms of eight years on Count 1 and three years on Count 9, with terms to run concurrently; a $1400 assessment; and a fine of $200.

Lipscomb, Pigee, and Webb each appeal.

## II. ISSUES

On appeal, we consider: (1) whether the district court's instructions to the jury on Counts 6 and 7 of the indictment constituted a constructive amendment of either of those two counts; (2) whether the court erred in denying the defendant-appellants' motion for a new trial; (3) whether the trial court's determination as to the quantity of crack cocaine constituting the defendant-appellants' relevant conduct was clearly erroneous; (4) whether the trial judge erred in denying Lipscomb's Motion for Severance from her co-defendants, Pigee and Webb; (5) whether the judge erred in denying Lipscomb's Motion to Dismiss Count 7 of the indictment for its alleged omission of a necessary element; (6) whether the district court erred in concluding that the government presented sufficient evidence to enable a rational trier of fact to find Pigee guilty of conspiracy to distribute crack cocaine; (7) whether the court's decision to enhance Webb's offense level for possession of a firearm was clearly erroneous; and (8) whether the trial court erred in assigning Webb a category III criminal history.

## III. DISCUSSION

### A. Constructive Amendment of Counts 6 and 7

Lipscomb argues that the district court constructively amended Counts 6 and 7 of the indictment in violation of her Fifth Amendment right to indictment by grand jury.

■ Whether the trial judge constructively amended portions of the indictment is a question of law, which this Court reviews *de novo. See United States v. Burdix–Dana,* 149 F.3d 741, 742 (7th Cir. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1118, 143 L.Ed.2d 113 (1999).

Count 6 of the indictment charged Lipscomb with a violation of 21 U.S.C. § 856(a)(1). Specifically, it alleged that Lipscomb maintained a residence (539 Highland Avenue in Alton, Illinois) for the purpose of distributing and using cocaine and cocaine base. With regard to Count 6, the judge instructed the jury that the government had to first prove "that the defendant did knowingly open or maintain any place," and then prove "that she did so for the purpose of manufacturing, distributing, or using controlled substances, namely cocaine and cocaine base...." However, the court added in a cautionary paragraph that the jury "may not find defendant Denishha Lipscomb guilty of maintaining a residence for the purpose of distribution and using cocaine and cocaine base as charged in Count 6 unless you find that she personally had the specific purpose of maintaining the residence for drug business."

Count 7 of the indictment charged Lipscomb with a violation of 21 U.S.C. § 856(a)(2), alleging that Lipscomb managed and controlled a building which she owned (541 Highland Avenue in Alton, Illinois) and that she knowingly made that building available for use for the purpose of storing cocaine and cocaine base. The trial court instructed the jury that to find Lipscomb guilty on Count 7, it needed to find

first, that the defendant did manage and control any building, and second that [the defendant] did so either as owner or lessee, agent, employee, or mortgagee, and third, that the defendant did knowingly and intentionally rent, lease, or make available for use with or without compensation a building for the purpose of unlawfully manufacturing, storing, distributing, or using controlled substances, namely cocaine and cocaine base. . . .

Lipscomb contends that the trial court constructively amended Counts 6 and 7 of the indictment by adding several additional bases for conviction. She argues that the court's instructions broadened the offenses charged, thereby constituting reversible error *per se* because it violated her Fifth Amendment right to indictment by grand jury.

This Court has explained that a constructive amendment occurs where proof at trial "goes beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury." *United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir.1994). "Such error," we explained, "which in a jury trial can also be generated or exacerbated by faulty instructions, violates the Fifth Amendment since the Grand Jury Clause limits the available bases for conviction to those contained in the indictment." *Id.* We held in *Willoughby* that a conviction that results from a constructive amendment is reversible *per se* because there is no assurance that it matches the offense charged. However,

we also cautioned that not every minor variance constitutes a constructive amendment:

[I]t is important to note that not all variations in proof that contradict or supplement verbiage in the indictment rise to the level of constructive amendments. Like variances, some are generally benign in that they do not create a risk of conviction for an uncharged offense. These typically involve the correction of mere technical errors contained in the indictment, of a typographical or clerical nature, for example, which would not alter the essential substance of the charged offense.

*Id.*; *see also United States v. Flowal*, 163 F.3d 956, 962 (6th Cir.1998) ("A variance rises to the level of a constructive amendment when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions to such a degree that there is a likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.") (citation omitted), *cert. denied*, —— U.S. ——, 119 S.Ct. 1509, 143 L.Ed.2d 662 (1999). We therefore consider whether the variances in the trial court's instructions on Counts 6 and 7 of the indictment were such that they created a risk that Lipscomb may be convicted for an uncharged offense.

*1. Count 6*

■ We believe that the variances in the court's instructions on Count 6 were so minor that they did not generate any risk that Lipscomb would be convicted of a crime not charged. Although the indictment contained the phrase "maintain a residence" and the language used in the instruction was "open or maintain any place," the difference is negligible and not likely to create any confusion, especially in light of the fact that both the indictment and the instruction referred to the same street address, 539 Highland Avenue.

Additionally, we cannot hold that the mere fact that the instruction at one point

referred to "manufacturing, distributing, or using ... cocaine or cocaine base," whereas the indictment charges only "distributing and using" these substances, constitutes a constructive amendment of Count 6. The government introduced no evidence at trial that Lipscomb had ever manufactured cocaine or cocaine base at 539 Highland Avenue (or, for that matter, at 541 Highland Avenue) and the prosecuting attorney never made any such argument. Finally, the trial judge told the jury that it "may not convict" unless it found Lipscomb guilty of "maintaining a residence for the purpose of distribution and using cocaine and cocaine base" in the cautionary paragraph of the instructions. This instruction uses the exact language from Count 6 of the indictment.

In sum, we view the fact that the trial court earlier referred to a "place" instead of a "residence" and added "manufacturing" to using and distributing in an earlier reference as benign supplemental verbiage. *See, e.g., Lemons v. O'Sullivan,* 54 F.3d 357, 364 (7th Cir.1995) (holding that the prosecutor's inclusion of the statutory definition of sexual conduct in closing arguments was not a constructive amendment of the indictment even though said definition did not appear in the indictment, but merely benign supplemental verbiage because defendant had fair notice of what was being charged against him). Therefore, we hold that because there is no danger that Lipscomb was convicted of an uncharged offense, the court did not constructively amend Count 6.

### 2. Count 7

■ With regard to Count 7, the judge's instruction told the jury that the government must prove that Lipscomb made the building at 541 Highland Avenue "available for the purpose of unlawfully manufacturing, storing, distributing, or using cocaine

or cocaine base." The trial judge gave no limiting instruction or cautionary paragraph with Count 7 and the government introduced some evidence at trial that the defendants distributed cocaine at 541 Highland Avenue even though "distributing" was not alleged in Count 7 of the indictment.[5] In effect, the trial court's instruction broadened the possible bases for Lipscomb to be convicted under Count 7 to include manufacturing, distributing, or using.

When a constructive amendment is alleged, the United States Supreme Court has held that the issue is "whether [the defendant] was convicted of an offense not charged in the indictment," and that "broadening the possible bases for conviction from that which appeared in the indictment" is fatal to a conviction. *United States v. Miller,* 471 U.S. 130, 138, 105 S.Ct. 1811, 1816, 85 L.Ed.2d 99 (1985), *citing Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Because of the inadequacy of the indictment as drafted, we have no way of knowing whether Lipscomb was actually convicted under the "storing" prong of the instruction as it appeared in Count 7 of the indictment, or if the jury found her guilty under the manufacturing, using, or distributing prongs, none of which appeared in the indictment. We thus hold that the trial judge, when giving the jury instructions, constructively amended Count 7 of the indictment. Because such a constructive amendment is an error that is reversible *per se,* we reverse Lipscomb's conviction on Count 7 and remand the case to the trial judge with instructions to dismiss Count 7, and for resentencing as the trial judge may see fit.

### B. Defendants' Motion for a New Trial

■ Lipscomb argues that the district court abused its discretion in denying her

---

**5.** Count 7 of the indictment charged that Lipscomb "did manage and control a building which she owned, specifically the house at 541 Highland Avenue in Alton, Illinois, and knowingly made that building available for

the purpose of storing cocaine and cocaine base, commonly known as 'crack cocaine', both Schedule II Narcotic Controlled Substances; all in violation of Title 21, United States Code, Section 856(a)(2)."

Motion to Dismiss or for a New Trial in light of the "newly discovered evidence" regarding the JVC television set.[6] Lipscomb contends that after the trial she discovered that DEA Agent Moore presented false testimony which significantly corroborated Reagan Jones' testimony that he made numerous drug purchases from Lipscomb and her husband. The district court found that Moore's testimony was not false; defendants-appellants disagree, claiming that the court's factual findings on this point were clearly erroneous.

■ We will reverse the denial of a motion for a new trial only for an abuse of discretion. *See United States v. Balistrieri*, 779 F.2d 1191,1225 (7th Cir.1985). The trial court denied the defendants' motion for a new trial based on its finding that Moore's testimony at the trial was not false. "If that finding is correct, then clearly there was no abuse of discretion. We must accept the trial judge's findings of fact unless they are clearly erroneous." *Id.*

Reagan Jones testified at trial that he gave Brian Frye a TV that Jones had leased from the Alton Rent–A–Center in exchange for drugs. Agent Moore testified that he was in Lipscomb's house during the search and that he helped Alton Police Sergeant Waldrup record the serial number on a TV found in one of the bedrooms. Moore testified that Sgt. Waldrup then contacted the Alton Rent–A–Center to see if they had leased the TV.

After the trial, Lipscomb's counsel interviewed Waldrup, who denied having called the Rent–A–Center with the TV serial numbers. As a result, the defendants moved for a new trial. The trial judge held two post-trial evidentiary hearings on the matter. During the course of these hearings, although Sgt. Waldrup and a Rent–A–Center manager denied Moore's allegations, DEA Agent Paul Robinson and Illinois State Police records corroborated Moore's testimony.

■ In order for claimed perjury to serve as the basis for a new trial, this Court has held that three factors must be met. Specifically, the court must be reasonably satisfied that: (1) the testimony given by a material witness is false; (2) without the testimony, the jury might have reached a different conclusion; and (3) the party seeking a new trial was taken by surprise at the time the false testimony was offered and did not know it was false until after the trial's conclusion. *See United States v. Gonzalez*, 933 F.2d 417, 447 (7th Cir.1991); *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928).

Based on the evidence offered at the two posttrial hearings, the judge ruled that Moore had not perjured himself and denied defendants' motion to dismiss or for a new trial. The court found that the evidence supported Moore's contentions that the TV set was present in Lipscomb's house, that he had called out the serial number while an Alton police officer recorded it, and that an Alton officer had indeed called in a serial number to the Illinois State Police. The only portion of Moore's testimony in question was which Alton officer had done the checking.

We agree with the trial judge's findings that the evidence introduced at the two post-trial hearings demonstrated that Moore had not presented false testimony. One minor discrepancy is not sufficient to overturn a trial judge's credibility determinations. *See, e.g., United States v. Mancillas*, 183 F.3d 682, 701 n. 22 (7th Cir. 1999) ("We do not second-guess the [trial] judge's credibility determinations because he or she has had the best opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an

---

**6.** Defendants-appellants Pigee and Webb join Lipscomb in this argument.

appellate record." (citation omitted) (brackets in original)), *petition for cert. filed*, No. 99–6626 (Oct. 18, 1999). Therefore, we hold that the court did not abuse its discretion in denying the defendants motion for a new trial based on the "newly discovered evidence" regarding the television.

### C. Quantity of Illegal Substances

The defendants-appellants each argue that the district court erred in calculating the quantity of drugs attributable to them. Lipscomb, Pigee, and Webb argue that the court erred by estimating that Frye and Lipscomb had sold Reagan Jones at least 15 grams of crack cocaine. Further, Pigee and Webb each claim that the district court wrongly attributed all transactions of their coconspirators to them for sentencing purposes. Finally, Pigee argues that the district court erred in its ruling that he sold the "crack" form of cocaine base.

▮ "When choosing the base offense level in a narcotics case, the district court must take into consideration not only the drug amounts involved in the offense of conviction, but any 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Howard*, 80 F.3d 1194, 1202 (7th Cir.1996), *quoting* U.S.S.G. § 1B1.3(a)(2) & comment (n. 2). *See also United States v. Beler*, 20 F.3d 1428, 1431 (7th Cir.1994). This Court reviews the sentencing court's calculation of the drug amount only for clear error. *See Howard*, 80 F.3d at 1202 (citation omitted). "We must be satisfied, however, that the calculation is based on reliable evidence; speculation and unfounded allegations will not do." *Id.*

#### 1. Calculation of the drug quantity

▮ The defendants first take issue with the fact that the trial judge calculated the quantity of crack cocaine constituting their relevant conduct based on estimates taken from Reagan Jones' testimony. Jones testified that he had bought crack "literally hundreds" of times from Frye and Lipscomb at various locations throughout Alton, and that he had bought crack hundreds of times from Frye and Lipscomb at their home at 539 Highland Avenue. Jones said that each time he bought crack from Frye and Lipscomb, he paid no less than $5–$10 and no more than $80–$100. Witness testimony established that, on average, $10 buys .065 grams of crack in Alton, Illinois.

The judge determined that Jones had purchased crack from Frye and Lipscomb at least 210 times and calculated that Jones had bought not less than 15 grams of crack from Frye and Lipscomb, noting that "if we use the most conservative figures in applying them to the sales, it comes to a sum of approximately 52 grams." If Jones had spent only $11 each time he bought crack (which we know to be a conservative figure, considering Jones' testimony that he sometimes spent $80–$100, and never less than $5–$10), then he would have purchased no less than 15 grams of crack.

▮ This Court has held that estimates of drug quantity are acceptable if they are "based on evidence possessing sufficient indicia of reliability and not 'nebulous eyeballing.'" *Howard*, 80 F.3d at 1204 (citations omitted). It is permissible for a court to take witness' estimates of the amount of drugs they purchased and multiply that by the minimum quantity sold on each occasion. *See id.* A court may also extrapolate drug quantities from the amount of money used to purchase the drugs. *See id.*

The sentencing court's calculations find sufficient support in the record before us. We therefore hold that the trial court was not clearly erroneous in its calculation of the amount of crack sold by Frye and Lipscomb to Jones.

#### 2. Foreseeability

▮ As a co-conspirator, a defendant can only be held responsible for other

transactions in which he did not participate that were "reasonably foreseeable" to the defendant. *See United States v. McEntire*, 153 F.3d 424, 438 (7th Cir.1998). Pigee and Webb both contend that the district court erred in finding foreseeable, and thereby attributing to them, all of the offenses of their co-conspirators.

■ This Court reviews findings of fact made in a sentencing hearing under a clearly erroneous standard. *See United States v. Purchess*, 107 F.3d 1261, 1265–66 (7th Cir.1997).

Webb argues that he was involved in 20 transactions. He claims that the trial court erred in its conclusion that the transactions between Frye, Lipscomb, and Jones were reasonably foreseeable to Webb because there is no evidence that Webb knew of, or was present at, those transactions.

Along the same lines, Pigee contends that the court erred in determining that any of the drug transactions at 539 Highland Avenue were foreseeable to him. Pigee asserts that there was no evidence presented to establish that he shared or pooled income with his co-defendants.

■ The record supports the trial judge's finding that the crack transactions involving Lipscomb and Frye were reasonably foreseeable to Webb and Pigee even if they were not actually present at each and every transaction. Melton Thomas' testimony established that Pigee supplied crack to Frye, and Jones' testimony indicated that the same is true of Webb. Therefore, the record suggests that not only did Webb and Pigee "know of" these transactions, but that they were working "behind the scenes" to ensure that Frye and Lipscomb had enough drugs to sell. Because the drug transactions involving Frye and Lipscomb were reasonably foreseeable to all individuals involved in the charged conspiracy, we hold that the district court did not commit clear error in holding Pigee and Webb accountable for the crack sold by their co-conspirators.

### 3. Determination that Pigee sold "crack"

■ Finally, Pigee argues that the judge erred in sentencing him for distributing the "crack" form of cocaine. We apply the clearly erroneous standard to the trial court's finding. *See United States v. Purchess*, 107 F.3d 1261, 1265–66 (7th Cir.1997).

■ The government is not required to perform scientific testing to determine if the cocaine base in question is crack. *See United States v. Story*, 137 F.3d 518, 521 (7th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 143, 142 L.Ed.2d 116 (1998). Witness testimony alone may provide a sufficient basis for a trial judge to conclude that the form of cocaine base sold by the defendant was indeed crack. *See id.* In fact, this Court recently held that the testimony of addicts may establish whether crack was the drug involved in the transactions at issue, explaining that "those who smoke, buy, or sell this stuff are the real experts on what is crack." *United States v. Bradley*, 165 F.3d 594, 596 (7th Cir. 1999).

In the instant case, Jason Dorner, an admitted ·crack addict, ·testified that he bought "crack" from Pigee at least 15 times. Because a court is permitted to rely on witness testimony in determining what illegal substances were sold, we hold that the court's relevant conduct determinations with respect to Pigee were not clearly erroneous.

### D. Lipscomb's Motion for Severance

■ Pursuant to Fed.R.Crim.P. 8(b), Lipscomb argues that her trial was improperly joined with Webb and Pigee. She contends that joining her drug charges with the weapons charges against Pigee and Webb confused the jury and prejudiced Lipscomb. Lipscomb asserts that the district court should have granted her motion for severance because all of the

charges in the indictment were not a part of the same set of acts.

We review the defendant's claim of misjoinder de novo. *See United States v. Stillo*, 57 F.3d 553, 557 (7th Cir. 1995). However, "a misjoinder 'requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Schweihs*, 971 F.2d 1302, 1322 (7th Cir. 1992), *quoting United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986). "In making this determination of whether the misjoinder was harmless, we may consider the effect of appropriate limiting instructions charging the jury to consider the guilt or innocence of each defendant individually." *Id.*

Under the Federal Rules of Criminal Procedure, defendants may be charged jointly if they "participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8. Rule 8(b) does not require that the defendants be charged with identical crimes. *See United States v. Marzano*, 160 F.3d 399, 401 (7th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1095, 143 L.Ed.2d 95 (1999). "The focus is on the underlying acts that constitute criminal offenses. The defendants must be charged with crimes that well up out of the same series of such acts, but they need not be the same crimes." *Id.* (citation omitted).

Counts 6 and 7 of the indictment charge Lipscomb with owning and operating crack houses at 539 and 541 Highland Avenue in Alton, Illinois. Count 1 charges Lipscomb, Pigee, and Webb with conspiring to deal cocaine and cocaine base. In Counts 9 and 10, the indictment charges Pigee and Webb with the unlawful possession of firearms.

Lipscomb owned the houses named in the indictment, and Pigee and Webb rented one of the houses from Lipscomb. When police executed the search warrants of 539 and 541 Highland Avenue, they found two guns at 539 and two more at 541, one of which was found near 4.2 grams of cocaine.

This Court has noted that "where firearms have been discovered along with evidence of a defendant's drug trafficking, joinder of firearms and weapons charges has been approved due to the natural inferences that may be drawn from the contemporaneous possession of guns and drugs or drug paraphernalia: the firearm is an indication of drug activity, and participation in drug trafficking supplies a motive for having the gun." *United States v. Hubbard*, 61 F.3d 1261, 1270 (7th Cir.1995) (holding misjoinder inappropriate where discovery of the guns occurred more than seventeen months after the narcotics transaction between the defendants) (citations omitted). *See also United States v. Jones*, 880 F.2d 55, 62 (8th Cir.1989); *United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir.1987); *United States v. Sanko*, 787 F.2d 1249, 1251 (8th Cir.1986); *United States v. Cox*, 934 F.2d 1114, 1119 (10th Cir.1991); *United States v. Valentine*, 706 F.2d 282, 289 (10th Cir.1983).

In the instant case, we believe that joinder of these defendants was appropriate under Fed. R. Crim. P. 8(b). Possession of firearms and drug trafficking are closely related. *See United States v. Cooper*, 19 F.3d 1154, 1163 (7th Cir.1994) (stating that "[t]his Court has previously held that weapons are 'tools of the trade' of drug dealers"), *citing United States v. Rush*, 890 F.2d 45, 49 (7th Cir.1989). Additionally, all of the violations charged in the indictment occurred at the same time and place, and clearly constituted "a series of acts." There is also no evidence that Lipscomb suffered any prejudice as a result of the joinder. Finally, the court gave the appropriate instructions to the jury, advising it to consider each count on its own and to "analyze what the evidence in the case shows with respect to each defendant, leaving out of consideration any evidence admitted solely against some other defen-

dant or defendants." Therefore, we hold that the trial court did not abuse its discretion in denying Lipscomb's Motion for Severance.

### E. Lipscomb's Motion to Dismiss Count 7 for Failure to Allege a Necessary Element

Lipscomb contends that the trial court erred in denying her Motion to Dismiss Count 7 of the indictment for its failure to allege a necessary element. Specifically, Lipscomb contends that Count 7 was fatally flawed in that it did not allege that she committed the offense "knowingly and intentionally." In light of our holding that the court constructively amended Count 7 of the indictment and our reversal of Lipscomb's conviction on this Count, we need not reach the issue of whether the trial judge erred in denying Lipscomb's Motion to Dismiss Count 7.

### F. Sufficiency of Evidence to Support Pigee's Conspiracy Conviction

■ Pigee argues that there is no evidence to support the jury's finding that he participated in a conspiracy to sell drugs with Frye, Lipscomb, and Webb. He asserts that although he did sell drugs, he did so in competition with his co-defendants, not in cooperation with them.

■ "[T]he jury's verdict must be upheld if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Blanton*, 884 F.2d 973, 978 (7th Cir.1989), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ Once a drug conspiracy is shown to exist, evidence that establishes a particular defendant's participation in that conspiracy beyond a reasonable doubt, is sufficient to convict even if the connection between the defendant and the conspiracy is slight. *See id.* As discussed at length

earlier in this opinion, the record supports the jury's findings that Pigee participated in the conspiracy as charged. Specifically, Pigee lived with Webb (one of the conspirators) and rented a house from Lipscomb (another conspirator). Melton Thomas testified that when Brian Frye (Lipscomb's husband and coconspirator) was out of crack, Pigee would come to Frye's residence, the two men would excuse themselves for a short time, and when Frye would return from the meeting with Pigee he would have crack to sell to Thomas. We believe that, from these facts, a rational trier of fact could conclude that Pigee conspired with his codefendants to sell drugs in Alton, Illinois.

### G. Decision to Enhance Webb's Offense Level for Unlawful Possession of a Firearm

■ Webb contends that the trial judge erred in enhancing Webb's offense level for possession of a firearm during the course of the conspiracy. Webb argues that the gun found under his bed was not "present" during the conspiracy and therefore should not count against Webb for sentencing purposes.

■ This Court reviews findings of fact made in sentencing hearings and the district court's application of the United States Sentencing Guidelines under a clearly erroneous standard. *See United States v. Purchess*, 107 F.3d 1261, 1265–66 (7th Cir.1997).

The Guidelines establish a two-level sentencing enhancement "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The accompanying commentary explains the rationale behind the enhancement:

The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example,

the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in his closet.

U.S.S.G. § 2D1.1, Commentary n. 3.

In its discussions on the application of the weapons enhancement, this Court has rejected arguments by defendants that the mere presence of firearms in their residences does not warrant application of the enhancement provided in § 2D1.1(b)(1). *See, e.g., United States v. Atterson,* 926 F.2d 649, 663 (7th Cir.1991) (citations omitted). In *Atterson,* we also explained that the government is not required to "show a connection between the weapon and the offense, only that the weapon was possessed during the offense." *Id.*

Webb acknowledges that under *Atterson* and other case law from this Circuit, the district court did not err in applying the enhancement for possession of a firearm. Webb argues, however, that *Atterson* and its ilk have been wrongly decided by this Court and should be overturned. Webb offers no compelling reason for this Court to overrule *Atterson,* and, finding none, we decline to do so.

Accordingly, we hold that the trial court did not commit clear error when it enhanced Webb's offense level for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1).

*H. Webb's Criminal History*

Webb contends that paragraph 47 of his Presentence Report ("PSR") puts him in criminal history category II, but that the district court erroneously sentenced Webb as a category III offender. Although paragraph 47 does indeed indicate that Webb's prior criminal convictions result in two criminal history points (which would place him in category II for sentencing purposes under U.S.S.G. Ch. 5, Pt. A), paragraph 48 of the PSR indicates that pursuant to U.S.S.G. § 4A1.1(d) two points must be added because Webb committed the offense while on probation for another drug offense. As a result of these two additional points, paragraph 49 of the PSR indicates that Webb is in criminal history category III for sentencing purposes. The sentencing table found at Chapter 5, part A of the Guidelines provides that an individual with an offense level of 28 (Webb's offense level) with four criminal history points is in criminal history category III. Therefore, we hold that the district court did not err in sentencing Webb as a category III offender.

## IV. CONCLUSION

We hold that the district court did not constructively amend Count 6 of the indictment as to Lipscomb, but that it did constructively amend Count 7 of the indictment when presenting it to the jury. We therefore vacate Lipscomb's conviction as to Count 7, and remand the matter to the district court with instructions to dismiss Count 7 and to resentence Lipscomb. Based on this holding, it is not necessary to reach the issue of whether the trial court erred in denying Lipscomb's Motion to Dismiss Count 7 for failure to allege a necessary element.

We also hold that the trial judge did not err in denying the defendants-appellants' motion for a new trial and that the court did not erroneously determine the quantity of crack cocaine constituting the defendants-appellants' relevant conduct, did not erroneously enhance Webb's offense level for possession of a firearm, nor did it err in sentencing Webb as an offender with a criminal history category III. We further hold that the district court did not err in denying Lipscomb's Motion for Severance from her co-defendants, Pigee and Webb. Finally, we hold that the record provides evidence sufficient to enable a rational trier of fact to find Pigee guilty beyond a reasonable doubt of conspiracy to distribute crack cocaine.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.