In the

# United States Court of Appeals
### For the Seventh Circuit

No. 12-2532

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BETTY PHILLIPS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 34 — **James B. Zagel**, *Judge.*

ARGUED FEBRUARY 12, 2014 — DECIDED MARCH 14, 2014

Before POSNER, FLAUM, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* Betty Phillips and her husband Wayne perpetrated a tax fraud scheme in 2009 and 2010, in which they filed tax returns claiming that they had overpaid the IRS and were entitled to more than $800,000 in refunds. In response to one of these tax returns, the IRS issued a refund check for about $350,000, which the couple cashed. A jury convicted both of them. This appeal concerns only Betty Phillips. She challenges her conviction, arguing that the dis-

trict court improperly admitted evidence, and that the government constructively amended the indictment and violated her right against self-incrimination. We affirm.

## I. Background

In 2009 and 2010, Betty and Wayne Phillips perpetrated a partly successful tax fraud scheme. For tax year 2008, they submitted two tax returns to the IRS. They submitted the first return in March 2009 on behalf of a Betty Jean Phillips Trust. Mrs. Phillips signed this tax return, and she was listed as the trustee. This trust claimed income of $47,997. The couple filed the second return in April on behalf of a Wayne Phillips Trust. Wayne Phillips signed this tax return, but Betty Phillips was again listed as the trustee. This return reported income of $1,057,585. Both returns claimed that all of the trusts' income had gone to pay fiduciary or trustee fees, which meant that the trusts had no taxable income. Accordingly, the returns claimed that the trusts had overpaid federal taxes and were entitled to refunds. For 2008, the Wayne Phillips Trust claimed a refund of $352,528, and the Betty Phillips Trust claimed $15,999. In May 2009, the IRS issued a refund check for $352,528. The check was made out to "Wayne Phillips, Betty Jean Phillips—TTEE." (TTEE stands for trustee.) That month, Mr. and Mrs. Phillips both endorsed the check and deposited it into a joint bank account.

These tax returns were fraudulent. The IRS had no record of any taxes being paid by these trusts. On December 3, 2009, the IRS served summonses on Mr. and Mrs. Phillips, requiring them to give testimony and produce documents. During the rest of the month, the couple withdrew from their bank account the $244,137 remaining from their refund proceeds by making withdrawals from thirteen different locations.

The couple followed the same strategy for tax year 2009. In April 2010, Wayne Phillips filed a 2009 tax return on behalf of the Wayne Phillips Trust, this time naming himself as trustee. This return listed income of $1,056,000 and claimed a $352,000 refund. Betty Phillips changed her name to Samara Beth El Bey and submitted a return in April on behalf of the Samara Beth El Bey Trust. She again listed herself as trustee. (For simplicity, we will refer to both returns in her name as "the Betty Phillips Trust returns.") This return claimed income of $441,000 and sought a refund of $147,000.

The IRS never paid refunds to the Betty Phillips Trust for 2008 or 2009, nor to the Wayne Phillips Trust for 2009. The IRS has no record of either Mr. or Mrs. Phillips inquiring into the status of the refunds when the checks were not sent.

Betty and Wayne Phillips were indicted in early 2011 and both proceeded to trial pro se. A jury convicted Betty Phillips of conspiracy to defraud the government with respect to claims in violation of 18 U.S.C. § 286, and of knowingly making a false claim to the government in violation of 18 U.S.C. § 287.[1] The district court sentenced her to forty-one months' imprisonment and ordered her to pay (jointly with her husband) $352,528 in restitution. She appealed.

## II. Discussion

### A. Constructive amendment

Betty Phillips argues that the government violated the Grand Jury Clause of the Fifth Amendment by introducing

---

[1] Wayne Phillips was also convicted of these two counts and of another violation of 18 U.S.C. § 287. He appealed as well, but we dismissed his appeal for failure to prosecute after he did not file an opening brief.

evidence that invited the jury to convict her on different bases than those set forth in the indictment. She neither objected below to any relevant statement by the government nor raised the issue of constructive amendment to the indictment, so we review only for plain error. *United States v. Presbitero*, 569 F.3d 691, 698 (7th Cir. 2009). For Betty Phillips to prevail on a constructive amendment argument on plain-error review, she must demonstrate that she probably would have been acquitted if not for the amendment. *Id.*

A constructive amendment of an indictment occurs when the evidence at trial "goes beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury." *United States v. Pigee*, 197 F.3d 879, 886 (7th Cir. 1999) (citation omitted). Such an amendment violates the Fifth Amendment and can occur during the government's presentation of evidence, through faulty jury instructions, or both. *Id.* However, "not all variations in proof that contradict or supplement verbiage in the indictment rise to the level of constructive amendments." *Id.* (citation omitted). Instead, the crime charged in the indictment must be "materially different or substantially altered at trial, [so that] it is impossible to know whether the grand jury would have indicted for the crime actually proved." *United States v. Trenell*, 290 F.3d 881, 888 (7th Cir. 2002) (citation omitted).

Mrs. Phillips was charged in counts one and two of the indictment, which charged a conspiracy to defraud the government and presenting a false claim, respectively. The first count specifically mentioned the Wayne Phillips Trust returns from 2008 and 2009, and the second mentioned only the 2008 Wayne Phillips Trust return. The indictment did not

mention the Betty Phillips Trust returns. The government introduced all four tax returns during trial, however. And during closing arguments, the government contended that the conspiracy in count one included all four tax returns. The government argued that the scheme inherent in all four returns was the same, and that the unusual similarities among the four returns were proof of the conspiracy. Mrs. Phillips argues that the indictment was too narrow to permit introduction of the returns for the Betty Phillips Trust, because it specifically mentioned only the Wayne Phillips Trust.

This argument is unpersuasive because the indictment can be read naturally to include all four tax returns. The first sentence of the indictment describes a conspiracy to "submit false, fictitious, and fraudulent claims" that lasted from March 2009 to April 2010. These dates include the returns submitted for both the Wayne Phillips Trust and the Betty Phillips Trust. The fact that the Wayne Phillips Trust returns are mentioned in the indictment does not preclude the government from relying upon extremely similar evidence that also falls within the charged dates and of which Betty Phillips clearly had notice. *See Presbitero*, 569 F.3d at 700 (emphasizing importance of notice to defendant in constructive amendment context). Therefore, this was not a situation where "the proof at trial establish[ed] offenses different from or in addition to those charged by the grand jury." *Pigee*, 197 F.3d at 886. Indeed, "admission of evidence intricately related to the charged crimes … does not constructively amend the indictment." *United States v. Alhalabi*, 443 F.3d 605, 614 (7th Cir. 2006). This case is similar to *Alhalabi*, a wire fraud case in which the government presented evidence about wire transfers other than the ones charged in the indictment, but which followed the same fraudulent pattern. *Id.* We

found that no constructive amendment occurred because "[t]he government simply supplied more technical details that easily fit with the allegations in the indictment." *Id.* Here, Betty and Wayne Phillips each submitted two returns that followed the same fraudulent pattern, and the Betty Phillips Trust returns merely supplied "more technical details" about the mechanics and depth of the conspiracy. Accordingly, we reject Mrs. Phillips' argument that the government constructively amended the indictment.

## B. Admission of the Betty Phillips Trust tax returns

The government moved in limine to admit the Betty Phillips Trust returns. It argued that the returns were direct evidence of the conspiracy, or in the alternative, that they were admissible pursuant to Federal Rule of Evidence 404(b), which prohibits evidence of a defendant's other acts to show her propensity for bad behavior, but permits such evidence when offered to show motive, intent, knowledge, etc. Mrs. Phillips objected to the admission of the returns at trial, but the district court summarily overruled her objection.

We review evidentiary decisions for abuse of discretion and reverse only for harmful errors. *United States v. Vargas*, 689 F.3d 867, 873, 875 (7th Cir. 2012). The Betty Phillips Trust returns were direct evidence of the conspiracy. As noted above, the indictment charged a conspiracy between March 2009 and April 2010. It does not matter here that the Betty Phillips Trust returns were not mentioned in the indictment, because they still pointed directly towards the existence of a conspiracy by virtue of their similarities to the Wayne Phillips Trust returns. "Evidence of overt acts which occurred after a conspiracy was formed and which were related to the object of the conspiracy is admissible regardless of whether

the overt acts are charged in the indictment." *United States v. Harris*, 542 F.2d 1283, 1300 (7th Cir. 1976); *accord United States v. Elizondo*, 920 F.2d 1308, 1319 (7th Cir. 1990). Of course, direct evidence is almost always admissible, and Betty Phillips does not make the Rule 403 argument that would be required to exclude direct evidence. Thus, she could prevail only if we found—contrary to our conclusion above—that the Betty Phillips Trust returns were exclusively 404(b) evidence and not direct evidence at all.

Finally, Mrs. Phillips objects to the district court's failure to give a limiting instruction. This argument is unpersuasive for multiple reasons. Most elementally, she did not request a limiting instruction below, and limiting instructions are not required until they are requested. *United States v. Akinrinade*, 61 F.3d 1279, 1284 (7th Cir. 1995). In sum, the district court did not abuse its discretion in admitting the tax returns.

### C. Betty Phillips' right against self-incrimination

IRS Special Agent Gregory Howard served a summons on Wayne Phillips on December 3, 2009, requesting records and documentation. Agent Howard testified that he asked two other IRS agents to serve a summons on, and interview, Betty Phillips. Both summonses were returned in the same envelope on December 8, he testified. These dates corresponded to the couple's dash to drain their joint bank account. During closing arguments, the government contended that Betty and Wayne Phillips would not have made rapid withdrawals if they had had nothing to hide.

Mrs. Phillips claims that the government's questioning of Agent Howard commented on her silence in violation of her Fifth Amendment right against self-incrimination. She ar-

gues that Agent Howard spoke of sending agents to "attempt" to interview her, which Mrs. Phillips claims subtly implied that she had refused to speak. She did not object to Howard's testimony or to the prosecutor's statement at closing, so we review only for plain error. *United States v. Della Rose*, 403 F.3d 891, 906 (7th Cir. 2005). Of course, a defendant has "a constitutional right to say nothing at all about the allegations." *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1017 (7th Cir. 1987). But the government violated her right only if it "manifestly intended to refer to [her] silence, or … [if] the remark was of such a character that the jury would naturally and necessarily take it to be a comment on [her] silence." *United States v. Andreas*, 216 F.3d 645, 674 (7th Cir. 2000) (citation and internal quotation mark omitted).

In light of what happened at Mrs. Phillips' trial, her argument is unconvincing. The government's explanation for Agent Howard's testimony—to establish that the couple started withdrawing cash as soon as they became aware of the IRS investigation—is logical and is reflected in the government's closing argument. The government intended to, and did, point out suspicious conduct and timing, rather than comment on Mrs. Phillips' invocation of her right against self-incrimination. Nor would a jury be likely to view Agent Howard's testimony as commenting on her silence. Indeed, the evidence does not even tell us whether the agents actually spoke to Mrs. Phillips, and if they did, what she did or did not say. Nor did the record clearly suggest that she was silent. We therefore conclude that the government did not violate her right against self-incrimination.

### III. Conclusion

We AFFIRM Betty Phillips' conviction.