In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4205

United States of America,

Plaintiff-Appellee,

v.

Calvin Trennell, a/k/a Meechie,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 561--Rebecca R. Pallmeyer, Judge.

Argued November 1, 2001--Decided May 17, 2002


   Before Flaum, Manion, and Kanne, Circuit
Judges.

   Manion, Circuit Judge.  In 1998, Calvin
Trennell was indicted for conspiring to
possess with the intent to distribute
cocaine and cocaine base, also known as
crack cocaine, in violation of 21 U.S.C.
secs. 841 and 846. The indictment did
not identify the specific quantity of
cocaine and cocaine base involved in the
conspiracy, but rather referred to
"wholesale quantities." Three days before
his trial was scheduled to commence, the
Supreme Court announced its decision in
Apprendi v. New Jersey, 530 U.S. 466
(2000), holding that factors, other than
prior convictions, which increase a
sentence beyond the statutory maximum
must be submitted to the jury and proven
beyond a reasonable doubt. At the
pretrial hearing, the government
suggested the possibility of reconvening
the grand jury to obtain a superseding
indictment in light of the concerns
raised by the holding in Apprendi.
However, because of scheduling concerns
of both the government and defense
counsel, Trennell was tried under the
original indictment. At trial, the
government's bill of particulars, jury
instructions, and verdict form all
referred to specific amounts of cocaine
and cocaine base. The jury found that
Trennell conspired to distribute more

than 5 kilograms of cocaine and 50 grams of cocaine base. After trial, Trennell filed a motion for a new trial or for judgment notwithstanding the verdict, arguing that it was an error to allow a verdict form that permitted the jury to find specific amounts of cocaine attributable to him when the indictment was silent as to drug quantities. The district court denied Trennell's motion and sentenced him to 360 months in prison with a five-year period of supervised re lease, a fine of $5,000, and a mandatory special assessment of $100. Trennell appeals. We affirm the conviction and the sentence.

I.  Background

In 1997, the FBI identified Robert Allen, Jr. as a drug dealer and began a wiretap investigation. Through that operation, the government discovered that Calvin Trennell was a participant in a large drug conspiracy as both a cocaine and cocaine base dealer. Trennell, along with Allen and other co-conspirators, purchased cocaine and cooked it into cocaine base which they then re-sold. By cooking the cocaine with a mixture of baking soda, the quantity of drugs could be increased by 100%. Trennell also brokered cocaine and cocaine base transactions between Allen and other conspirators. Robert Allen testified at Trennell's trial that from 1996 through 1998, the conspiracy was involved in trafficking 100 kilograms of cocaine base.

One of the transactions between Allen and Trennell occurred while Trennell was under surveillance by the FBI in 1998. During that transaction, Trennell received $20,000 from Allen to buy cocaine. Police followed Trennell in his car after the transaction and a chase ensued. He attempted to dispose of the cash during the chase by throwing it out of his window but he was eventually arrested and the cash was retrieved. Following his arrest, in November 1998, the government indicted Trennell and twelve others with conspiring to possess with the intent to distribute wholesale quantities of cocaine and cocaine base and using a telephone in the commission of a felony. Each of the twelve co-defendants pleaded guilty to the charges and, in 1999, Trennell also pleaded

guilty to the conspiracy count. However, because the government recommended a sentence double that of the other co-defendants, the court allowed Trennell to withdraw his plea and proceed to trial.

On June 26, 2000, three days before his trial was scheduled to commence, Apprendi v. New Jersey, 530 U.S. 466 (2000), was decided, holding that factors, other than prior convictions, which increase a sentence beyond the statutory maximum must be submitted to the jury and proven beyond a reasonable doubt. At a pretrial hearing the government raised a concern that the indictment, as drafted, might not comply with Apprendi because it did not mention specific quantities of cocaine and cocaine base. The government suggested that a superseding indictment including specific quantities of drugs could be obtained, or Trennell could proceed by way of information regarding the drug quantities charged. Trennell's counsel declined to waive Trennell's right to a grand jury and proceed by way of information. However, because of scheduling concerns of both Trennell's counsel and government counsel, the government decided not to obtain a superseding indictment and to proceed under the original indictment. At that time, Trennell's counsel did not object to proceeding without a change in the indictment./1

During trial, the government provided a considerable amount of evidence against Trennell, including the testimony of several of the co-conspirators, testimony from agents about the wiretap investigation on Allen, and recorded telephone conversations involving Trennell. Specifically, this testimony described transactions between Trennell, Allen and other conspirators involving multiple kilograms of cocaine that were cooked into cocaine base as well as additional transactions involving dozens of kilograms of cocaine. Trennell himself testified that he received four and one-half ounces of cocaine from Allen, had it cooked into cocaine base, and then delivered the cocaine base to another conspirator. He defended his actions by testifying that he was recruited into the drug conspiracy by his cousin Jeff Bradley, who was acting as a confidential informant for the Drug Enforcement Agency (DEA). He argued that he relied on the

statements by his cousin to arrive at the conclusion that he too was working as a confidential informant of the DEA.

At the trial's conclusion, the government submitted jury instructions that required that in order to sustain a charge of conspiracy, the jury had to find beyond a reasonable doubt that the conspiracy involved a specific amount of a controlled substance. The government also proposed a verdict form which instructed the jury to find beyond a reasonable doubt a specific amount of drugs attributable to the conspiracy consistent with that instruction. The defendant did not object to the inclusion of specific drug amounts on the proposed verdict form or jury instructions. The jury found Trennell guilty on the conspiracy count of the indictment but did not reach a verdict on the telephone count which was later dismissed. On the verdict form the jury specifically found that the total amount of drugs distributed in the conspiracy was in excess of 5 kilograms of cocaine and 50 grams of cocaine base.

Trennell filed a post-trial motion for a new trial or for a judgment notwithstanding the verdict based on the court's evidentiary rulings concerning his testimony about his role as a secret DEA agent, as well as the language of the verdict form that allowed the jury to find him responsible for specific quantities of cocaine. The court denied his motion.

The government filed its Presentence Report ("PSR") on September 15, 2000. The report concluded that Trennell was responsible for 19.5 kilograms of cocaine and 5.25 kilograms of cocaine base. Over Trennell's legal objections to the PSR, and based largely upon the testimony of Trennell's co-conspirators, the court found that the evidence established that Trennell was accountable for more than 1.5 kilograms of cocaine base. Based on this amount of cocaine base, the court assigned to Trennell a base offense level of 38, pursuant to U.S.S.G. sec. 2D1.1(a)(3). Combined with a two-point sentencing enhancement for the substantial risk of injury related to the car chase and another two-point enhancement for Trennell's false testimony, Trennell was assigned an offense level of 42 which has a

sentencing range of 360 months to life imprisonment. The district court then sentenced him to 360 months in prison with a five-year period of supervised release, a fine of $5,000, and a mandatory special assessment of $100. Trennell appeals.

## II.  Discussion

On appeal, Trennell argues that because the indictment failed to specify a drug quantity, but the jury instructions and verdict form included a drug quantity, his indictment was constructively amended in violation of the Fifth Amendment. He also contends that the failure of thegovernment to include the specific drug quantities in the indictment violates Apprendi. Finally, he challenges the sufficiency of the evidence, arguing that the evidence does not support a finding that he was accountable for more than 1.5 kilograms of cocaine base.

## A. Constructive Amendment of the Indictment

In determining whether the government constructively amended Trennell's indictment, we first address the appropriate standard of review. During the instruction conference, Trennell did not object to the jury instructions concerning drug quantity when presented to the court; thus we review for plain error. See United States v. Jones, 224 F.3d 621, 626 n.3 (7th Cir. 2000) (citing United States v. Olano, 507 U.S. 725, 732 (1993)). Trennell's counsel only objected to a proposed jury instruction involving aiding and abetting and that objection was resolved. In fact, when asked by the court whether he had any other objections to the instructions, he confirmed to the judge that he had none. Typically, whether a trial judge constructively amended portions of the indictment is a question of law that the Court of Appeals reviews de novo. United States v. Pigee, 197 F.3d 879, 885 (7th Cir. 1999). However, a defendant must properly preserve an objection at the trial court level before the Court of Appeals will apply this standard. See United States v. Renner, 238 F.3d 810, 812-13 (7th Cir. 2001). To assign error to any portion of the charge to the jury or omission therefrom a party must state "distinctly the matter to which that party objects

and the grounds of the objection" before the jury retires to consider its verdict./2 Fed. R. Crim. P. 30. Because Trennell did not preserve the error by objecting to the instructions, we review for plain error.

Trennell claims, however, that an indictment is a prerequisite to jurisdiction, and that the failure to charge an element of the offense in the indictment is a jurisdictional defect that requires reversal of his conviction notwithstanding the plain error standard. He claims that he was indicted under 21 U.S.C. sec. 841(b)(1)(C), which does not include drug quantity and permits a maximum sentence of 20 years. Yet he was convicted pursuant to 21 U.S.C. sec. 841 (b)(1)(A), which includes drug quantity and permits a life sentence. However, the charge was broader than Trennell claims. The indictment charges him with violating 21 U.S.C. secs. 841 & 846, and not a specific subsection under sec. 841. And this court has specifically held that drug quantity is not an element of the offense under sec. 841. United States v. Bjorkman, 270 F.3d 482, 490-91 (7th Cir. 2001); United States v. Brough, 243 F.3d 1078, 1080 (7th Cir. 2001). Drug quantity is also not an element of the offense of conspiracy to distribute illegal drugs. See 21 U.S.C. sec. 846; United States v. Hill, 252 F.3d 919, 922 (7th Cir. 2001). Other circuits have found that the failure to charge drug quantity in the indictment deprives the district court of jurisdiction and requires automatic reversal. See United States v. Cotton, 261 F.3d 397, 407 (4th Cir. 2001), cert. granted, ___ U.S. ___, 122 S.Ct. 803, 151 L.Ed.2d 689 (2002) (argued April 15, 2002);/3 United States v. Gonzalez, 259 F.3d 355, 361 n.3 (5th Cir. 2001). However, it is well established in this circuit that an error of omission of drug quantity in the indictment is subject to plain error analysis. See United States v. Atkins, 274 F.3d 444, 453 (7th Cir. 2001). See infra sec. IIB. We have instructed prosecutors in the past, and reiterate the position here, that post-Apprendi indictments should specify, and the trier of fact must be instructed to find, both the elements of the offense, as listed in sec. 841(a), and the drug amounts listed in sec. 841(b) that the prosecutor relies on to establish the maximum sentence. However, Trennell did

not object to the failure to do so in this case and so we review for plain error.

Under the plain error standard, we will not reverse a decision unless the defendant demonstrates that (1) there was error; (2) the error was plain; and (3) the error affected the defendant's substantial rights. See Fed. R. Crim. P. 52(b); Olano, 507 U.S. at 732-35. If the defendant meets these three requirements, we may correct the error if "in our discretion, we find the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Ross, 77 F.3d 1525, 1538 (7th Cir. 1996) (discussing Olano, 507 U.S. at 736-37). Pursuant to the plain error standard, a constructive amendment "must constitute 'a mistake so serious that but for it the [defendant] probably would have been acquitted' in order for us to reverse." United States v. Remsza, 77 F.3d 1039, 1044 (7th Cir. 1996) (quoting United States v. Gunning, 984 F.2d 1476, 1482 (7th Cir. 1993)).

The Fifth Amendment states that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. Const. Amend. V. See also United States v. Soskin, 100 F.3d 1377, 1380 (7th Cir. 1996). An indictment that is constructively amended at trial violates the Constitution because the Fifth Amendment requires an indictment of a grand jury to guarantee that the allegations in the indictment and the proof at trial "match in order 'to insure that the defendant is not subject to a second prosecution, and to give the defendant reasonable notice so that he may prepare a defense.'" United States v. Folks, 236 F.3d 384, 390 (7th Cir. 2001), cert. denied, ___ U.S. ___, 122 S.Ct. 74 (2001) (quoting United States v. McKinney, 954 F.2d 471, 480 (7th Cir. 1992)). "A constructive amendment to an indictment occurs when either the government . . . the court . . . or both, broadens the possible bases for conviction beyond those presented by the grand jury." United States v. Cusimano, 148 F.3d 824, 829 (7th Cir. 1998) (quoting United States v. Floresca, 38 F.3d 706, 710 (4th Cir. 1994)). In order to demonstrate constructive

amendment, the crime charged in the indictment must be "materially different or substantially altered at trial, [so that] it is not impossible to know whether the grand jury would have indicted for the crime actually proved." United States v. Muelbl, 739 F.2d 1175, 1180-81 (7th Cir. 1984) (internal citations omitted) (finding no constructive amendment when jury instructions separated charged drug offenses while indictment only referred to drug offenses collectively). However, it is not a material amendment when the court's description of the indictment alters the terms of the indictment in an insignificant manner. United States v. Franco, 874 F.2d 1136, 1144 (7th Cir. 1989) (no amendment in supplemental instructions); United States v. Williams, 798 F.2d at 1024, 1033 (7th Cir. 1986) (no amendment in instructions).

  The court instructed the jury that it could find Trennell responsible for specific quantities of cocaine and cocaine base./4 The jury was also given a special verdict form that listed several specific amounts involved in the drugconspiracy ranging from less than 500 grams of cocaine to more than five kilograms of cocaine and 50 grams of cocaine base./5 While these quantities were not specifically mentioned in the indictment, not every variation from the terms of the indictment materially changes the indictment. United States v. Baker, 227 F.3d 955, 960 (7th Cir. 2000). In order to rise to the level of constructive amendment, the change must establish offenses different from or in addition to those charged by the grand jury. See Pigee, 197 F.3d at 886. Trennell argues that by allowing the jury to find the amounts of drugs involved, his charge was increased from a crime that carried a maximum sentence of 20 years to one that carried a maximum sentence of life. But Trennell was indicted for conspiring to "distribute and to possess with intent to distribute quantities of mixtures containing cocaine and cocaine base . . . ." Also, the indictment charged that part of the conspiracy was the resale of "wholesale quantities of cocaine and cocaine base" by the members of the conspiracy. This language was broad enough to include the quantity of drugs for which Trennell was convicted, namely 5 kilograms of cocaine

and 50 grams of cocaine base. A "variance between the broad allegations of an indictment and the narrower proof at trial" is acceptable so long as "the offense proved was fully contained within the indictment." United States v. Miller, 471 U.S. 130, 137 (1985). Because the proof at trial was fully contained in the indictment, and the jury instructions were narrower than the indictment, Trennell's claim that the indictment was constructively amended fails. The indictment put Trennell on notice that evidence of quantities, and specifically, wholesale quantities of cocaine and cocaine base, would be introduced in the government's case. Thus, he was able to prepare a defense. Therefore the court did not commit plain error by including specific quantities of drugs in the jury instructions and verdict form.

B.  Apprendi Issue

Trennell argues next that his conviction must be reversed under Apprendi because the indictment did not charge a specific quantity of drugs, even though the drug quantity was submitted to the jury.

The applicability of Apprendi is a question of law that we review de novo. United States v. Chemetco, Inc., 274 F.3d 1154, 1158 (7th Cir. 2001). Under Apprendi, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury . . . ." Apprendi, 530 U.S. at 490. Trennell argues that decisions from this circuit applying Apprendi require that facts which increase a defendant's sentence above the statutory maximum must both be charged in the indictment and submitted to the jury. See, e.g., United States v. Westmoreland, 240 F.3d 618, 632 (7th Cir. 2001) ("Thus, when drug quantity is not charged in the indictment or submitted to the jury, the statutory maximum under sec. 841(b) must be determined without reference to drug quantity."). Trennell argues that because the indictment failed to specifically address drug quantity, the maximum sentence he could have been exposed to was 20 years. Because he received a 30-year sentence under sec. 841(b), he argues that his sentence was illegally increased above the statutory maximum in violation of Apprendi.

In the wake of Apprendi, we have held that sections "841(b)(1)(A) and 841(b)(1)(B), the enhanced statutory maximum penalty provisions of sec. 841, 'may not be utilized for sentencing without a finding of drug quantity by the jury.'" Westmoreland, 240 F.3d at 632 (citations omitted). Here the alleged Apprendi error occurred not at sentencing, as the jury found drug quantity beyond a reasonable doubt, but only at the indictment stage. Therefore, in order for us to find an Apprendi violation, we would have to find that the failure alone of the indictment to state drug quantities that the prosecutor seeks to prove under sec. 841(b) would be a constitutional violation, even if the trier of fact finds those quantities beyond a reasonable doubt. We held in Bjorkman that Apprendi does not "rewrite or change the elements of any federal offense; it does, however, determine who must make particular decisions, and what the burden of persuasion must be." Bjorkman, 270 F.3d at 491. Because Apprendi arose as a state prosecution, it did not address federal offenses and did not address the contents of a federal indictment. See Apprendi, 530 U.S. at 477 n.3 (disclaiming any reliance on, or interpretation of, the Fifth Amendment's Indictment Clause). Other circuits have held, contrary to this position, that the failure to charge drug quantity in the indictment deprives the district court of jurisdiction and requires automatic reversal. See Cotton, 261 F.3d at 407; Gonzalez, 259 F.3d at 361. We need not, however, resolve the issue in this scenario, because even if an Apprendi error occurred by failing to allege drug quantity in the indictment, it was harmless because the trier of fact did in fact determine drug quantity beyond a reasonable doubt. Cf. United States v. Mechanik, 475 U.S. 66, 72-73 (1986) (holding that petit jury's guilty verdict in prosecution for drug-related offenses and conspiracy established probable cause to charge defendants and thus rendered harmless any error in grand jury's charging decision).

It is now well established in this circuit that "Apprendi errors in both the indictment and the charge to the jury are subject to harmless error analysis." United States v. Atkins, 274 F.3d 444, 450 (7th Cir. 2001) (citing United States

v. Bjorkman, 270 F.3d 482, 492 (7th Cir. 2001); United States v. Martinez, 258 F.3d 582, 586 (7th Cir. 2001); United States v. Nance, 236 F.3d 820, 825 (7th Cir. 2000)). Under that standard of review, if it is clear beyond a reasonable doubt that a properly instructed jury would have found Trennell guilty of conspiring to possess with intent to distribute over 5 kilograms of cocaine and 50 grams of cocaine base, then the Apprendi error was not so serious that we would set aside the judgment. See Atkins, 274 F.3d at 450; Bjorkman, 270 F.3d at 492; Nance, 236 F.3d at 826. In this case we need not engage in any hypothetical analysis as to whether the jury's verdict would have differed because the jury was properly instructed to find guilt beyond a reasonable doubt as to drug quantity and specifically found that Trennell was accountable for more than 5 kilograms of cocaine and 50 grams of cocaine base on the special verdict form. Therefore any error in the indictment under Apprendi is harmless.

C.  Sufficiency of Evidence

   Trennell's final argument is that the district court erred at sentencing by finding that Trennell was accountable for more than 1.5 kilograms of cocaine base. The jury found Trennell's conspiracy involved at least 5 kilograms of cocaine and 50 grams of cocaine base. This finding subjected him to a statutory maximum sentence of up to life imprisonment under either 21 U.S.C. sec. 841(b)(1)(A)(ii)(II), for cocaine, or (iii), for cocaine base. The district court calculated his base offense level at 42, based on the determination that Trennell was accountable for more than 1.5 kilograms of cocaine base, which set his sentencing guideline range at 360 months to life imprisonment. Trennell argues that while the trial testimony is "replete with testimony about transactions involving cocaine powder," he maintains that the record does not support the district court's finding that he conspired to distribute 1.5 kilograms of cocaine base./6

   On this appeal, Trennell does not challenge the district court's factual finding that over 15 kilograms of cocaine may be attributed to him, and the record

amply supports this finding. According to U.S.S.G. sec. 2D1.1(c), a person convicted of a crime involving between 15 and 50 kilograms of cocaine has a base offense level of 34. However, the district court also found that Trennell's crimes involved 1.5 kilograms of cocaine base, which mandates a base offense level of 38. At the sentencing hearing the judge noted that "I think the evidence amply establishes that the amount, whatever it was, was in excess of 1.5 [kilograms of cocaine base]." We review a district court's factual findings at sentencing for clear error. United States v. Roe, 210 F.3d 741, 748 (7th Cir. 2000). Under this standard a district court's findings will only be reversed if the court is left with "a definite and firm conviction that a mistake has been committed." United States v. Huerta, 239 F.3d 865, 875 (7th Cir. 2001) (citations omitted).

   The testimony at trial does indicate that a significant amount of cocaine base exchanged hands between the conspirators. Specifically, his co-conspirators testified that in total, 3 to 5 kilograms of cocaine powder were cooked into cocaine base for Trennell during 1997. In the cooking process, baking soda is added to the cocaine base so that more drugs are produced in the process than the starting amount of cocaine./7 Also, one of the conspirators testified that he was involved in a drug transaction involving five kilograms of cocaine base. This testimony is sufficient to support the district court's finding that Trennell was responsible for more than 1.5 kilograms of cocaine base.
   Trennell also argues that the district court erred by not establishing a cocaine to cocaine base conversion ratio as required by United States v. Stott, 245 F.3d 890, 911 (7th Cir. 2001). Under Stott, when sentencing is determinative on quantities of cocaine that have been converted into cocaine base, it is "incumbent upon the Government to establish a conversion ratio." Id. (citing United States v. Hunter, 145 F.3d 946, 952 (7th Cir. 1998) ("[C]onversion ratios are a finding of fact that must be determined in each individual case . . . .")). A conversion ratio includes two components: the percentage of the powder cocaine that a defendant could reasonably foresee would be converted into base, and

evidence of the percentage of weight lost during theprocess of converting cocaine into base. Id. See also Hunter, 145 F.3d at 952. However, the district court did not need to convert the amounts of cocaine to cocaine base because the evidence indicated that when Trennell provided 3 to 5 kilograms of cocaine to co-conspirators, he received this amount of cocaine base in return. And, finally, evidence was presented at trial that he was involved in actual transactions of cocaine base that amounted to more than 5 kilograms. Due to this fact, any reliance placed by the defendant on Stott is misplaced. In this case, based on the wealth of evidence presented to the court, the district court did not commit clear error in sentencing Trennell based on an excess of 1.5 kilograms of cocaine base.

III.  Conclusion

   Trennell does not succeed on his arguments that the indictment was constructively amended because he was on notice from the indictment that he would be prosecuted for participating in a conspiracy to distribute certain quantities of cocaine and cocaine base. Secondly, because the jury found specific amounts beyond a reasonable doubt, any Apprendi error in the indictment was harmless. Finally, the trial court did not commit clear error on sentencing because evidence at trial permitted the district court to find that Trennell's conspiracy involved more than 1.5 kilograms of cocaine base. For the foregoing reasons, we affirm the verdict and Trennell's sentence.

FOOTNOTES

/1 At the pretrial hearing Trennell's counsel stated that adding quantity terms to the indictment "would not materially change the indictment. It does change Mr. Trennell's rights in the event of a conviction and a potential sentence, but it does not materially change the indictment." Later, during the same hearing, the following colloquy occurred:

GOVERNMENT COUNSEL:  We have closure on the grand jury. . . . We will not be seeking to supersede.

THE COURT:  Okay.

DEFENSE COUNSEL:  Good.

THE COURT:  That's fine.

GOVERNMENT COUNSEL:  Terrific.

/2 Trennell did raise this issue in a post-trial motion, but that does not cure his failure to object to the instructions at the time they were delivered. See Woods v. City of Michigan City, Ind., 940 F.2d 275, 280 (7th Cir. 1991) (holding that post-judgment motions cannot be used to raise arguments or legal theories that could have been and should have been brought before judgment).

/3 Both Cotton and Gonzalez involved defendants who were sentenced in excess of the statutory maximum for drug-related crimes. In Cotton, the Fourth Circuit found that it was plain error to impose a sentence of more than 20 years on defendants indicted and convicted for conspiracy to distribute cocaine hydrochloride and cocaine base when neither the indictment nor the verdict included specific drug amounts. Cotton, 261 F.3d at 404-07. In Gonzalez, the defendant pleaded guilty to conspiracy to possess with intent to distribute 500 pounds of marijuana, but was sentenced based on 777 kilograms of marijuana. Gonzalez, 259 F.3d at 357. The Fifth Circuit held that because the quantity of marijuana was not alleged in the indictment, it was plain error for Gonzalez to have been sentenced to 78 months which was longer than the statutory maximum of 60 months. Id. at 358-61. Both circuits reached this decision by holding that the jurisdictional defect caused by the failure to include drug quantity in the indictment could not be cured regardless of the evidence introduced at trial. Cotton, 261 F.3d at 405; Gonzalez, 259 F.3d at 361 n.3. In neither of these cases was the issue of drug quantity submitted to a jury and found beyond a reasonable doubt as it was for Trennell.

/4 Instruction No. 19 provided:

To sustain the charge of conspiracy against the defendant in Count One, the government must prove:

. . .

Third that the charged conspiracy involved a specific amount of controlled substances.

If you find from your consideration of all of the evidence that each of these propositions has been proven beyond a reasonable doubt, then you should find the defendant guilty of Count One.

/5 The jury selected the maximum available options

on the special verdict form which stated:

With respect to Count One, we, the jury, further find as follows:

. . .

|  | YES | NO |
|---|---|---|
| Total Amount of the Drugs Distributed in the Conspiracy Were in Excess of Five Kilograms of Cocaine | X | |
| Total Amount of the Drugs Distributed in the Conspiracy Were in Excess of 50 Grams of Cocaine Base | X | |

/6 The government argues that Trennell has waived this issue for purposes of appeal. Waiver results from the intentional relinquishment of a known right. United States v. Walton, 255 F.3d 437, 451 (7th Cir. 2001). The government contends that Trennell has waived any dispute concerning the evidence that served as the basis of his sentence because at the sentencing hearing, defense counsel conceded that they did not have "any factual disputes" with the PSR. However, at sentencing, Trennell did object to the attribution of the 1.5 kilograms of cocaine base on the basis that the government failed to prove that the cocaine provided to Trennell was converted to cocaine base. On appeal Trennell contests both the conversion factor and the sufficiency of evidence provided to the district court. Whether this challenge was adequate to preserve the challenge is a close question. However, because his argument for insufficient evidence fails, we need not decide this issue.

/7 Under the Sentencing Guidelines, the purity of the cocaine base cooked for the defendant has no impact on the weight determination for the purposes of sentencing. See United States v. Tucker, 20 F.3d 242, 245 (7th Cir. 1994) (holding that defendant was accountable for water and baking soda contained in cocaine base mixture under 21 U.S.C. sec. 841(b)(1)(B)(iii) as defined by U.S.S.G. sec. 2D1.1(c)).