UNITED STATES of America, Plaintiff–Appellee,

v.

Tommy ROBINSON, Defendant–Appellant.

No. 03–2063.

United States Court of Appeals, Seventh Circuit.

Submitted June 24, 2004.

Decided June 24, 2004.

48

Michelle L. Jacobs, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Tommy L. Robinson, Pekin, IL, pro se.

Before CUDAHY, POSNER, and WILLIAMS, Circuit Judges.

## ORDER

Tommy Robinson was convicted after a bench trial of one count of conspiracy to possess and distribute crack, 21 U.S.C. §§ 846, 841(a)(1), and three counts of distributing crack, *id.* § 841(a)(1). The district court sentenced him to a total of 262 months' imprisonment and five years' supervised release and ordered him to pay $1,650 in restitution. Robinson appeals, but his appointed counsel seeks to withdraw under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because he is unable to find a nonfrivolous issue for appeal. Robinson was notified of counsel's motion, *see* Cir. R. 51(b), but did not file a response. Because counsel's brief is facially adequate, we limit our review of the record to the potential issues identified therein. *See United States v. Tabb,* 125 F.3d 583, 584 (7th Cir.1997). We conclude that all of those potential issues are frivolous, so we grant counsel's motion to withdraw and dismiss Robinson's appeal.

Robinson was indicted after he sold suspected crack twice to an informant and once to an undercover DEA agent. The government alleged that these transactions were part of Robinson's involvement in a larger conspiracy to distribute crack; during the investigation, DEA agents had monitored seven other controlled buys of crack from Robinson's three co-conspirators. Two of Robinson's co-conspirators pleaded guilty. Robinson and the fourth defendant, his brother Michael, stipulated at their joint trial that ten controlled buys of a "white chunky substance" took place, and that Robinson personally sold a "white chunky substance" to the informant and undercover agent on the dates alleged in the indictment. Robinson, though, refused to stipulate to the drug type because he wanted to contest the methods the crime lab had used in determining that the "white chunky substance" was crack, and so the makeup of the substance became the sole focus of trial. The government's chemists testified that they tested the "white chunky substance" purchased from Robinson and concluded that indeed it was crack. At sentencing the district court calculated a total offense level of 32 using the drug guidelines, but then went on to sentence Robinson as a career offender, *see* U.S.S.G. § 4B1.1, which resulted in an offense level of 37. Subtracting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1 resulted in a sentencing range of 262 to 327 months.

Counsel first considers whether Robinson could challenge the district court's disposition of several pretrial motions. Robinson filed a motion to sever his trial from that of his codefendants, as well as motions to disclose the identities of the government's informants, to suppress a witness's identification of him from a single photograph, and to suppress physical evidence seized in his house. Robinson also joined in his brother's motion to strike as "surplusage" all references in the indictment to drug type and quantity. The district court never ruled on Robinson's severance motion, but after trial held that the other motions had been "mooted" by Robinson's trial stipulations.

■■■ We agree with counsel that any challenge to the court's handling of Robinson's pretrial motions would be frivolous. After the case had already been resolved against two of the defendants, Robinson informed the district court that he wanted "to join his brother and litigate solely the Government's ability to prove that the controlled substance … [is] cocaine base," so he waived any argument that his trial should be severed from his brother's. *See United States v. Taglia,* 922 F.2d 413, 416 (7th Cir.1991). And by broadly stipulating to all of the factual allegations underlying

the indictment except for drug type and quantity, Robinson effectively abandoned his demands for disclosure of the informants' identities and suppression of the eyewitness identification. Robinson is bound by his stipulations, *see United States v. Wingate*, 128 F.3d 1157, 1160 (7th Cir.1997), so the district court was correct in viewing these two motions as "moot." The same is true as to Robinson's motion to suppress the evidence seized from his house; nothing from the house was introduced at trial. That leaves only Robinson's motion to strike drug type and quantity from the indictment as surplusage. We have never held that the government cannot allege drug types and quantities in a drug case, and in this particular case the government was *required* to allege that Robinson dealt in specific amounts of crack because in two of the four counts it was seeking a sentence above the default statutory maximum. *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *United States v. Macedo*, 371 F.3d 957, 962–63 (7th Cir.2004); *United States v. Knight*, 342 F.3d 697, 709 (7th Cir.2003).

■ Counsel next considers whether Robinson might argue that the evidence underlying his convictions is insufficient because the government lacked reliable proof that the substance he sold was crack as opposed to another form of cocaine. But drug type is not an element of § 841(a)(1), and so long as the government proves that the offense involved some controlled substance, a failure of proof as to the particular drug alleged can affect only the government's ability to seek a statutory enhancement at sentencing. *See Edwards v. United States*, 523 U.S. 511, 513–14, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998); *Thomas v. United States*, 328 F.3d 305, 309 (7th Cir.2003); *United States v. Trennell*, 290 F.3d 881, 886–87 (7th Cir.2002).

That Robinson did not dispute that the "white chunky substance" was some form of illegal drug renders frivolous any sufficiency challenge as to his convictions.

■ Finally, counsel considers whether Robinson might challenge the district court's findings as to drug quantity or his status as a career offender. Only the career offender determination matters, though, because it yielded a higher range than what the probation officer calculated based on drug quantity, and the district court was required to use the higher numbers. *See* § 4B1.1; *United States v. King*, 356 F.3d 774, 780 (7th Cir.2004) (career offender offense level is to be used when it is "greater than the offense level otherwise applicable"). And as to the career offender determination, Robinson initially objected to the probation officer's inclusion in the presentence report of a prior conviction that made him eligible for sentencing as a career offender, but ultimately withdrew that objection and told the district court that he accepted application of the career offender guideline. Thus, any argument Robinson could construct would be frivolous because he waived the right to challenge the district court's calculation of his sentence using the career offender guideline. *See United States v. Redding*, 104 F.3d 96, 99 (7th Cir.1996) (holding that statements in transcript evidencing acceptance of sentencing calculations constituted waiver).

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.