# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 04-2032, 04-2293 & 04-2309

UNITED STATES OF AMERICA,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

DARRON J. MURPHY, SR.,

*Defendant-Appellant, Cross-Appellee,*

and

JENNIFER BAKER,

*Defendant, Cross-Appellee.*

———————

Appeals from the United States District Court
for the Southern District of Illinois.
No. 03 CR 30137—**G. Patrick Murphy**, *Chief Judge.*

———————

ARGUED JANUARY 13, 2005—DECIDED MAY 4, 2005

———————

Before ROVNER, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* A jury found Darron Murphy, Sr. guilty on an indictment charging five counts: tampering with a witness who was going to testify against his son (Darron Murphy, Jr.); using a firearm while doing the tam-

pering; being a felon in possession of a firearm; and two counts involving crack cocaine. The same jury also found Jennifer Baker, young Murphy's girlfriend, guilty of aiding and abetting Murphy, Sr. on the two counts related to witness tampering and one of the drug charges. After the jury spoke, the trial judge, G. Patrick Murphy (there may be too many Murphys in this case), granted Baker's motion for a judgment of acquittal on the two counts relating to tampering. Murphy, Sr.'s motions for judgments of acquittal were denied and he now appeals, arguing that his conviction on the jury tampering charge was tainted by a faulty jury instruction. If successful on the challenge, the related tampering charge involving the use of a firearm must also be set aside. The government appeals Judge Murphy's decision to grant post-verdict relief to Baker.

We begin with the facts. Pamela Hayden agreed to become an informant for local law enforcement after being arrested on drug charges. In December of 2002, she made two controlled purchases of crack cocaine from Darron Murphy, Jr., which led to his arrest.

On the evening of May 29, 2003, Hayden was smoking crack with three other folks at a trailer park home on Chain of Rocks Road in Granite City, Illinois. Murphy, Sr., who had sold drugs to Hayden several years earlier, showed up later that night. He was friendly at first, but he soon called Hayden a "snitch bitch hoe"[1] and hit her in the head with the back of his hand. He said he saw her name in discovery materials from his son's criminal case and that she was

---

[1] The trial transcript quotes Ms. Hayden as saying Murphy called her a snitch bitch "hoe." A "hoe," of course, is a tool used for weeding and gardening. We think the court reporter, unfamiliar with rap music (perhaps thankfully so), misunderstood Hayden's response. We have taken the liberty of changing "hoe" to "ho," a staple of rap music vernacular as, for example, when Ludacris raps "You doin' ho activities with ho tendencies."

responsible for putting him in jail. He put a gun—a small chrome-plated one—to her head and said he was going to kill her for putting his son in jail. He said this would be her last night and her body would be found in a ditch. Murphy then placed several calls, telling Hayden he was calling his people to get someone to dispose of her car.

Baker, who dealt drugs for Murphy, eventually arrived. Murphy asked Hayden for her keys before eventually ordering her outside to retrieve them from her car. Once out of the trailer, Hayden tried to run away, but she was thwarted by Baker, who grabbed her right arm. Murphy again told Hayden to get her keys. When Hayden stalled, an impatient Murphy hit her with the butt of his gun, splitting open the top of her head. After struggling for a few more minutes, Hayden managed to get in her car and drive away. A sheriff's deputy discovered her at 4 a.m. She had a bleeding gash on her head and bruises on her arm.

Police later arrested Murphy outside his home and discovered that he was carrying crack cocaine. They also arrested Baker inside Murphy's home. A search of the home revealed more crack, a syringe, baking soda, a digital scale used for weighing narcotics, and firearms, including the small chrome-plated one identified by Ms. Hayden.

In August of 2003, a federal grand jury returned a superseding indictment charging Murphy with five offenses: knowingly using physical force against another person with the intent to influence and prevent testimony in a formal proceeding, 18 U.S.C. § 1512(a)(2)(A); knowingly using and carrying a firearm during a crime of violence, *id.* § 924(c); being a felon in possession of a firearm, *id.* §§ 922(g) and 924(a)(2); possession with intent to distribute at least 5 grams of crack cocaine, 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii); and conspiring to distribute and possessing with the intent to distribute at least 5 grams of cocaine

base, *id.* and § 846. Baker was charged with aiding and abetting Murphy on the first two counts and with the count 5 conspiracy offense.

After the close of evidence during their joint trial, Judge Murphy instructed the jury that to sustain a charge of witness tampering the government had to prove that Murphy knowingly intimidated *or* used physical force against a witness. This instruction strayed from the language of the indictment, which charged Murphy only with using physical force. The indictment contained no mention of intimidation. But Murphy voiced no objection to the instruction. In granting Baker's request for a judgment of acquittal as to the tampering counts, Judge Murphy concluded that there was no evidence that Baker knew Hayden's identity as a witness when the assault occurred.

Baker was sentenced to a term of 78 months on the drug conspiracy count. Murphy was sentenced to 151 months on the drug counts, 120 months on the witness tampering and felon-in-possession counts. These sentences were ordered to run concurrent. The kicker for Murphy was a mandatory consecutive 84-month sentence (for a total of 235 months) on the charge of using a firearm while committing the violent crime of witness tampering.

Murphy claims that the jury instruction he now challenges constructively amended the indictment in violation of his Fifth Amendment rights. Put another way, he argues that the jury found him guilty of conduct for which he was never charged. Because Murphy agreed to the suspect instruction, he waived the issue, which ordinarily precludes appellate review. *E.g., United States v. Murry,* 395 F.3d 712, 717 (7th Cir. 2005); *United States v. Cooper,* 243 F.3d 411, 415 (7th Cir. 2001). We say "ordinarily" because the government has "waived waiver" by asserting that we can review Murphy's grievance under the plain error standard. *See United States v. Morgan,* 384 F.3d 439, 443 (7th Cir.

2004). To establish plain error, Murphy must show (1) error, (2) that is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings, i.e., affected its outcome. *See United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Montgomery*, 390 F.3d 1013, 1017 (7th Cir. 2004); *United States v. Trennell*, 290 F.3d 881, 886 (7th Cir. 2002).

Murphy has demonstrated the first three prongs. "An indictment that is constructively amended at trial violates the Constitution because the Fifth Amendment requires an indictment of a grand jury to guarantee that the allegations in the indictment and the proof at trial match in order to insure that the defendant is not subject to a second prosecution, and to give the defendant reasonable notice so that he may prepare a defense." *Trennell*, 290 F.3d at 888 (internal quotation and citations omitted). Here, the judge constructively amended the indictment by instructing the jury that Murphy could be found guilty of witness tampering if he knowingly intimidated *or* used physical force against Hayden. The judge apparently based his instruction on the old version of the witness tampering statute, which prohibited both intimidation and the use of physical force under the same subparagraph. *See* 18 U.S.C. § 1512(b)(1) (1996). Murphy, however, was charged with violating § 1512(a)(2)(A), which criminalizes "physical force or the threat of physical force," with no mention of intimidation. That conduct is criminalized in a separate offense, § 1512(b)(1).

The government says there was no error because the "intimidation" provision is a lesser included offense of the "physical force" provision. Not true. Under Federal Rule of Criminal Procedure 31(c), a jury may find a defendant guilty of "an offense necessarily included in the offense charged." *United States v. McCullough*, 348 F.3d 620, 624 (7th Cir. 2003). A lesser offense is necessarily included in

the charged offense if its elements are a subset of the elements of the charged offense. *Id.* (citing *Schmuck v. United States*, 489 U.S. 705, 716 (1989)). An offense cannot be "lesser included" if it contains an element not required by the greater one. *Id.* That is what we have here—§ 1512(b)(1) criminalizes "intimidation," which covers behavior unrelated to physical force, while § 1512(a)(2)(A) does not. The two subparagraphs are separate offenses.

As is often the case in plain error review, however, Murphy cannot prevail under the fourth prong, as he cannot show that he probably would have been acquitted but for the overbroad instruction. *See Trennell*, 290 F.3d at 887. Had the jury instruction been limited to physical force, the jury would have obviously reached the same result because there was strong evidence of physical force and injury. To argue, as Murphy does now, that "[i]t is entirely possible that the jury may not have believed Ms. Hayden's testimony that Mr. Murphy hit her, but did believe that Mr. Murphy intimidated her," is mere conjecture of the highest order. Hayden testified that Murphy hit her in the head, and that claim was corroborated by her medical records and by several witnesses who saw her injuries.[2]

On to Baker. Judges do not set aside jury verdicts very often, and when they do, they must have a good reason for doing so. As we have stated, "Rule 29 does not authorize the judge to play thirteenth juror." *United States v. Genova*, 333 F.3d 750, 757 (7th Cir. 2003). A judgment of acquittal should be entered only if there is insufficient evidence to

---

[2] This result might actually be good news for Murphy, perhaps preventing a pyrrhic victory. After all, the district court mistakenly sentenced him under the old witness tampering statute, *see* 18 U.S.C. § 1512(b)(1) (1996). That provision carried a maximum sentence of 10 years incarceration, which is what Murphy received. On remand, Murphy could receive double that, as the revised statute carries a 20-year maximum. *Id.* § 1512(a)(3)(B)(ii).

sustain the jury's findings. *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002). Under this standard, a trial judge should reverse a jury verdict only if, viewing the evidence in the light most favorable to the prosecution, the record contains no evidence on which a rational jury could have returned a guilty verdict. *Id.* at 569-70.

Here, Judge Murphy overturned the jury's verdicts because he concluded that there was no evidence that Baker knew at the time that the woman she grabbed (Hayden) was the informant responsible for Murphy, Jr.'s woes:

> There is no evidence that [Baker] was present or knew of the threats made in the trailer by Murphy, Sr. Nor is there any evidence that [Baker] showed up at the trailer at the behest of Murphy, Sr. Assuming that a jury could infer that [Baker] was summoned to the trailer by Murphy, Sr., there is no evidence at all as to the content of this assumed communication between Murphy, Sr. and [Baker]. In order to sustain the guilty verdicts on Counts 1 and 2, there must be evidence that [Baker] "knowingly" aided and abetted these offenses. Accordingly, the first requisite of the "knowledge" requirement is proof that [Baker] knew that the female running from the trailer that she blocked and grabbed was the CI responsible for Murphy, Jr.'s arrest and detention. There is no such evidence.

We believe Judge Murphy got it right—the record is devoid of evidence that Baker knew that Hayden was being worked over because she was a snitch. The government argues that there is "overwhelming" circumstantial evidence to allow the jury to make such an inference. Specifically, it cites four circumstances: Baker knew that a woman named Hayden was the informant; Murphy made calls for assistance and Baker eventually showed up at the trailer; Baker assisted in the assault; and Baker remarked the next day that Hayden should not have been left alive. Of this

evidence, her nasty comment is most incriminating, but even it does not establish that Baker knew *at the time* of the assault that Hayden was the snitch. The comment was decidedly vague and was made long after the incident occurred. Indeed, none of the evidence identified by the government suggests that Baker knew that Hayden was an informant at the time of the assault. Had Baker been merely charged with helping Murphy beat up Hayden, there would be no question that a guilty verdict would be sustainable. But a vital link between the evidence and the charge in the indictment is missing. Judge Murphy was correct in setting aside the verdicts.

One final matter before we leave this case. The government argued that if the convictions of Ms. Baker on counts 1 and 2 were reinstated, the sentence imposed upon Mr. Murphy should be vacated and his case remanded to the district court so it could consider a leadership-role upward departure under the guidelines as to him. Murphy argued that such a procedure would be violative of the rule announced in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), as interpreted by us in *United States v. Booker*, 375 F.3d 508 (2004). Subsequently, of course, the Supreme Court changed the rules of the game in *Booker v. United States*, 125 S. Ct. 738 (2005), holding that the federal sentencing guidelines were no longer mandatory. Although Murphy has not directly challenged his sentence and Baker has limited her involvement on appeal to resisting the efforts of the government to reinstate her convictions, we think both, because they were sentenced under the old unconstitutional regime, should, in the interest of justice, get the benefit of the procedures we recently announced in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), if they so desire. (In this regard, *see United States v. Macedo*, 2005 WL 851498 (7th Cir. Apr. 14, 2005), where we held that raising a *Booker* argument on a petition for rehearing in a direct appeal is sufficient to get the benefit of *Paladino*.)

Accordingly, to summarize, we affirm Murphy's convictions, reject the challenge to the order vacating the convictions of Baker on counts 1 and 2, and order both Murphy and Baker to tell us, within 14 days, whether they want us to issue a limited remand, per *Paladino*, to the district court for the purpose of having the judge determine if their sentences should be changed because the guidelines are now advisory only.

A true Copy:

Teste:

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***